NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPINIELLO COMPANIES, | |
| Plaintiff, | **OPINION & ORDER** |
| v. | Civ. No. 10-04492 (WHW) |
| INFRASTRUCTURE TECHNOLOGIES, INC., | |
| Defendant. | |

**Walls, Senior District Judge**

Defendant Infrastructure Technologies, Inc. moves to dismiss the complaint for lack of personal jurisdiction and improper venue. The motion is denied as moot because the Clerk of the Court is ordered to transfer this case to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1406(a). The Court did not hold a hearing and bases its conclusions on the complaint and affidavits filed by the parties.

### FACTUAL AND PROCEDURAL BACKGROUND

As part of a sewer rehabilitation project, the City of St. Cloud, Minnesota hired the plaintiff, Spiniello Companies, a New Jersey-based construction company, to line the city's sewers with cured-in-place piping.[1] Before Spiniello could install the cured-in-place pipes, the sewer lines needed to be cleaned. Spiniello received and accepted a bid for this preliminary cleaning work from the defendant, Infrastructure Technologies, Inc. ("Infratech"), a Minnesota-

---

[1] According to Spiniello's website, cured-in-place pipe is a less expensive alternative to replacing existing pipelines which involves insertion of a resin-based liner that conforms to the shape of the existing pipes. Cured-in-Place Pipe, Spiniello Infrastructure Worldwide, http://www.spiniello.com/CIPP.php (last visited April 25, 2011).

**NOT FOR PUBLICATION**

based company specializing in pipeline cleaning and inspection. Spiniello and Infratech signed a contract in October 2009 in which Spiniello agreed to pay Infratech $81,336.74 for this work.

The project did not go as planned. According to Spiniello, Infratech needed to complete its cleaning work in a timely manner so that Spiniello would have enough time to install the cured-in-place pipe by December 31, 2009, the deadline Spiniello and the City had agreed to. The parties dispute the precise cause of the delays that followed, but, in any event, Spiniello was unable to complete its work by the deadline.

Both parties claim losses related to the project. Spiniello says that it incurred additional expenses related to labor and equipment rental costs. Infratech says that it is owed more money because it had to clean more material out of the sewer pipes than the original estimate.

*   *   *

The procedural history of this case involves parallel cases filed here and in the United States District Court for the District of Minnesota. Spiniello sued Infratech in this Court on September 1, 2010. On November 5, 2010 Infratech sued Spiniello in the District Court for the District of Minnesota. *Infrastructure Tech, Inc. v. Spiniello Cos.*, Civ. No. 10-4482 (D. Minn. filed Nov. 5, 2010). Three days later, on November 8, 2010, Infratech filed this motion to dismiss for lack of personal jurisdiction and improper venue.

While the motion was pending before this Court, on December 23, 2010, Spiniello moved in the District of Minnesota to dismiss the case there on grounds that the suit was barred by a forum selection clause in the contract between Spiniello and Infratech. On March 15, 2011, this Court alerted the parties that it was considering a *sua sponte* transfer of this case to the District of Minnesota and gave the parties an opportunity to respond. ECF No. 15. On April 20, 2011, the Minnesota court granted Spiniello's motion and dismissed the case without prejudice.

NOT FOR PUBLICATION

*Infrastructure Tech., Inc. v. Spiniello Cos.*, Civ. No. 10-4482 (D. Minn. Apr. 20, 2011), ECF No. 17. On April 21, 2011, Infratech filed a complaint in this Court to preserve its claims pending appeal of the Minnesota court's order. ECF No. 20; *Infrastructure Tech., Inc. v. Liberty Mut. Grp.*, Civ. No. 11-2305 (D.N.J. filed April 21, 2011).

This Court now transfers this case to the District of Minnesota.

## DISCUSSION

Infratech seeks to dismiss the complaint because it claims that this Court lacks personal jurisdiction over it and that venue is improper here.

### A.  Personal Jurisdiction

This Court looks to New Jersey law to determine whether it has personal jurisdiction over the defendants. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. *Id.*

Due process requires that personal jurisdiction be asserted over a nonresident defendant only when that defendant has "minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Telcordia Tech., Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (brackets omitted).

A district court may exercise either general or specific personal jurisdiction over a defendant. *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008). General jurisdiction exists where the defendant maintains continuous and systematic contacts with the forum. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The plaintiff

**NOT FOR PUBLICATION**

here does not suggest that the defendant is subject to general jurisdiction in New Jersey, but maintains that it is subject to specific jurisdiction here.

A defendant's "minimum contacts" are sufficient for specific jurisdiction when it has "purposefully directed" its activities at a resident of the forum and "the injury arises from, or is related to, those activities." *Telcordia*, 458 F.3d at 177 (citation omitted). Parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to personal jurisdiction in the other state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).

Ultimately, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (citation omitted). A defendant's actions must "create a 'substantial connection' with the forum State" by engaging in "significant activities within a State," or creating "continuing obligations" between itself and forum residents. *Id.* at 475-76 (citations omitted).

Where, as here, a case involves an alleged breach of contract,[2] the Court considers the "totality of the circumstances," *Telcordia*, 458 F.3d at 177 (citation omitted), including "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach," *Gen. Elec. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted). Courts consider several factors to determine whether the defendant purposefully maintained sufficient contacts with the forum including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."

---

[2] In its opposition to the motion to dismiss, the plaintiff has not relied on its tortious interference claim, or, for that matter, even mentioned the claim in its brief or supporting affidavit.

**NOT FOR PUBLICATION**

*Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (quoting *Burger King*, 471 U.S. at 479).

The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Here, Spiniello provided an affidavit which states that Infratech had the following contacts with New Jersey:

(1) Infratech communicated with Spiniello employees in New Jersey via telephone, email and fax about the project and Infratech's work proposal, which it had faxed to Spiniello at its New Jersey office. Rodenberger Decl. ¶¶ 12, 13, 14;

(2) Infratech and Spiniello negotiated the terms of their contract via telephone, email and fax. *Id.* ¶ 16;

(3) Infratech signed a copy of the contract and sent it to Spiniello's office in New Jersey. *Id.*;

(4) Infratech "frequently communicated" with Spiniello employees about "its inability to complete the Work." *Id.* ¶ 26.

These contacts themselves, singly or collectively, do not demonstrate that Infratech engaged in "significant activities" in New Jersey or "created continuing obligations" between itself and Spiniello such that those contact are sufficient to conclude that it availed itself "the privilege of conducting business" in the state. *See Burger King*, 471 U.S. at 475-76 (quotation marks and citations omitted).

Personal jurisdiction does not require the physical presence of the defendant in the forum state. *Deutz AG*, 270 F.3d at 150-51. But, while "mail and telephone communications and the like sent by defendants into the forum may count as minimum contacts that support jurisdiction," *Asanov v. Gholson*, 209 F. App'x 139, 141-42 (3d Cir. 2006) (citing *Grand Entm't Group v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993)), in this case the "informational communications

5

in furtherance of [the] contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction," *Sunbelt Corp. v. Noble, Denton & Assocs.*, 5 F.3d 28, 32 (3d Cir. 1993) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985)); *see also Stuart*, 772 F.2d at 1193 ("an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws").

For instance, "'normal incidents' of legal representation, such as making phone calls and sending letters, do not, by themselves, establish purposeful availment to support the assertion of personal jurisdiction." *Asanov v. Gholson*, 209 F. App'x 139, 142 (3d Cir. 2006) (citing *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990)). In *Sher*, the Ninth Circuit addressed whether a Florida law firm which represented a California client in criminal proceedings in Florida was subject to personal jurisdiction in California based only on that representation. The Florida-based lawyers "accepted payment from a California bank, made phone calls and sent letters to California," *Sher*, 911 F.2d at 1362, and even visited their clients in Los Angeles, *id.* at 1363. The court concluded that these "normal incidents of this representation" did "not constitute purposeful availment of the privilege of conducting activities within California." *Id.* at 1362-63. Even through its travel to California, the law firm was not "availing itself of any significant California privilege by coming into the state to talk to its client" and the trips were "too attenuated to create a 'substantial connection' with California." *Id.* at 1363.[3]

Like the representation in *Sher*, Infratech's communications with Spiniello's New Jersey office were merely incidental to Infratech's work on a public works project in Minnesota. The locus of the relationship was in Minnesota, not New Jersey. These contacts do not show that

---

[3] The court ultimately concluded that there was personal jurisdiction based on the execution of a deed of trust in order to secure payment for the law firm because it contemplated significant future consequences. *Sher*, 911 F.2d at 1363.

**NOT FOR PUBLICATION**

Infratech was interested in New Jersey-based work, but rather was focused on a contract for work in Minnesota.

Infratech also did not create the type of "continuing obligations" present in *Burger King* or the case on which Spiniello relies, *Gen. Elec. v. Deutz AG*, 270 F.3d 144 (3d Cir. 2001). *Burger King* addressed "a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Burger King*, 471 U.S. at 480. *Deutz AG* dealt with a five-year joint project to design and manufacture diesel engines. *Deutz AG*, 270 F.3d at 149, 152. In concluding that a Pennsylvania court could properly assert personal jurisdiction over the defendant, the *Deutz AG* court noted that the defendant "had actively overseen the performance of the contract in that state for five years with no apparent difficulties in communication or travel" and "the contract was performed primarily in Pennsylvania." *Id.* at 152.

Unlike *Burger King* and *Deutz AG*, Infratech and Spiniello were not in a long-term arrangement; their's was a one-time, short-term construction project that took place in Minnesota, not New Jersey. *See Sher*, 911 F.2d at 1363 n.3 ("A one-shot Florida representation does not entail this kind of continuing contact with the forum state [California]."). The contract here did not contemplate the extensive future consequences present in *Burger King*, in fact the project was supposed to be concluded quickly. *See* Rodenberger Decl. ¶¶ 15, 24, 27.

Nor would the exercise of jurisdiction over the defendant be reasonable or comport with basic notions of "fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citation omitted). This is not a case in which Infratech actively sought to do business in New Jersey. Infratech, a Minnesota-based company, sought to subcontract on a Minnesota-based public works construction project. It was the City of St. Cloud—not

**NOT FOR PUBLICATION**

Infratech—that picked a construction company based in New Jersey. Infratech's communications with employees of Spiniello in New Jersey were incidental to the work on the project in Minnesota and are not substantial activity directed at the forum.

Spiniello makes much of the fact that its contract with Infratech contains a choice of law and forum selection clause. That clause states:

> In case of any controversy between the Subcontractor and the Contractor which does involve the Owner, this Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, and the **Subcontractor shall not** institute any action, in any way relating to this Agreement, against Contractor . . . except in a court . . . in Newark, New Jersey.

Rodenberger Decl. Ex. A, art. XXIV (emphasis added). Consideration of the forum selection and choice of law clause does not change the analysis.[4] At most, this clause prevents the subcontractor (Infratech) from suing outside Newark, New Jersey. It does not, on its face, require the contractor (Spiniello) to file suit in New Jersey. The parties did not agree that the **only** appropriate forum was New Jersey, they only agreed that the subcontractor could not initiate a case elsewhere. Because Spiniello, the contractor, brought this case, the clause is inapplicable.[5]

This Court lacks personal jurisdiction over Infratech in this case.

---

[4] While Spiniello does not explicitly raise the choice of law provision as a basis for finding personal jurisdiction, "such a provision standing alone would be insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482 (holding that when combined with a "20-year interdependent relationship" with a company based in the forum state, a choice of law provision "reinforced [the] deliberate affiliation with the forum State"). As explained, Infratech's connections with New Jersey are too attenuated, even combined with the choice of law provision, to allow the exercise of jurisdiction.

[5] Spiniello points out that the conclusion that Infratech may not sue Spiniello in Minnesota (based on the forum selection clause) and that Spiniello may not sue Infratech in New Jersey (based on a lack of personal jurisdiction) "is likely to lead to the absurd outcome of two lawsuits over this contract continuing to exist but with their present venues exchanged for one another." Spiniello Br. 10 (footnote omitted). Spiniello does not cite any cases, nor does the Court know of any, that conclude that the possibility of this outcome is a proper consideration in the determination of whether a court may exercise personal jurisdiction over a nonresident defendant.

**NOT FOR PUBLICATION**

### B. Transfer of Venue

Although the Court lacks personal jurisdiction, dismissal is not the only remedy because the Court may transfer venue of this matter to an appropriate court. Transfer of venue is governed either by 28 U.S.C. §§ 1404 or 1406. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Subsection 1404(a) provides for transfer of a case where both the original and the requested venue are proper. Subsection 1406(a) applies where the original venue is improper and provides for either transfer or dismissal of the case. *Jumara*, 55 F.3d at 878.

When subject matter jurisdiction is based on diversity of citizenship, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Paragraphs (1) and (3) are inapplicable here because Infratech does not "reside" in New Jersey and is not subject to personal jurisdiction here. For venue to be proper in New Jersey, this must be a "district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." § 1391(a)(2).

In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute. *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994). "Events or omissions that might only have some tangential connection

**NOT FOR PUBLICATION**

with the dispute in litigation are not enough. Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Id.* at 295.

This case is primarily based on Infratech's alleged breach of contract through its failure to provide enough labor to complete the project on time. Compl. ¶¶ 21-25.[6] These alleged breaches all took place in Minnesota where the work was to be performed. While it is true that Spiniello—a New Jersey based company—is allegedly owed damages for the breach, no substantial part of the events took place in New Jersey. It follows that venue is inappropriate in New Jersey.

Because venue is not proper in New Jersey, 28 U.S.C. § 1406 permits the Court to transfer this case to "any district or division in which it could have been brought" if it is in "the interest of justice." 28 U.S.C. § 1406(a).

In the Court's discretion, it is in the interests of justice to transfer this case to the United States District Court for the District of Minnesota for adjudication rather than to dismiss it. Transfer to the District of Minnesota is proper because it is a district where this action might have been brought. Infratech is subject to personal jurisdiction in Minnesota because Infratech it is headquartered there and venue is proper because Infratech is a resident of Minnesota and a substantial part of the events or omissions giving rise to the claim occurred there. *See* 28 U.S.C. § 1391(a)(1)-(2), (c). Because Spiniello cannot pursue its case in this District it will serve justice to permit Spiniello to litigate in Minnesota where the alleged breach occurred.

---

[6] The complaint also claims tortious interference with prospective economic gain because Infratech made a claim for payment to Spiniello's payment bond holder. Neither party explains where any of the events related to this claim took place, so the Court is unable to consider them.

**NOT FOR PUBLICATION**

## CONCLUSION

IT IS ORDERED that the Clerk of the Court TRANSFER this case to the United States District Court for the District of Minnesota.

IT IS ORDERED that the defendant's motion to dismiss is DENIED as moot.

May 10, 2011

/s/ **William H. Walls**
United States Senior District Judge